IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN J. GELMAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| W2 LIMITED, et al | : | NO. 14-6548 |

### MEMORANDUM AND ORDER

In this action, Plaintiff Jonathan J. Gelman ("Plaintiff" or "Gelman") seeks damages for breach of contract, unjust enrichment, and fraudulent transfer against Defendants W2 Limited ("W2"), Waller Marine, Inc. ("Waller Marine"), and David Waller (collectively, "Defendants"). Presently before the court is a discovery dispute regarding the validity of a Common Interest Agreement ("Agreement") covering communications between Plaintiff and his counsel, on the one hand, and non-party fact witness Jeffrey Greenwalt and his counsel, on the other, which has been the subject of letter briefs (Docs. 72 & 73).[1] For the reasons set forth herein, I find that the common interest doctrine[2] is applicable, but that the doctrine protects only communications made between Plaintiff's counsel and counsel for Greenwalt, and not those made directly between Plaintiff and Greenwalt.

---

[1] By Order dated January 11, 2016, the Honorable L. Felipe Restrepo referred all pre-trial discovery issues to me for disposition. Doc. 67. Upon Judge Restrepo's elevation to the Third Circuit, the matter was reassigned to the Honorable Berle M. Schiller. Doc. 71.

[2] In addition to having different names, the common interest doctrine is also referred to as the common interest privilege, no doubt because if the doctrine applies, it renders certain communications privileged. For the sake of consistency, I will refer to the common interest doctrine.

**I.     PROCEDURAL HISTORY**

Plaintiff commenced this action on November 13, 2014, originally naming as defendants W2 and Waller Marine.  See Doc. 1.  On December 29, 2014, Plaintiff filed an Amended Complaint which added David Waller as a defendant and added additional counts against Waller Marine.  See Doc. 13.

The dispute arises from a transaction entered into by Plaintiff and W2, the terms of which Plaintiff alleges were memorialized in a written promissory note dated August 10, 2011 ("Promissory Note").  See Doc. 1 Exh. "A."  Pursuant to the Promissory Note, W2 promised to pay Gelman the sum of $250,000 in one lump sum on November 10, 2011, or at any earlier date at the option of the borrower (W2), and it identifies Pennsylvania as the venue for any suit for collection.  Id.  The Promissory Note is signed by Gelman and Greenwalt, who is identified as "Authorized Agent for W2."  Id.  In Count I of the Amended Complaint, Plaintiff asserts a breach of contract claim against W2 for its alleged failure to repay the sum of $250,000 pursuant to the Promissory Note.  Count II (unjust enrichment), Count III (fraudulent transfer, 12 Pa. C.S.A. § 5104(a)(1)), Count IV (fraudulent transfer, 12 Pa. C.S.A. § 5104(a)(2)), Count V (fraudulent transfer, 12 Pa. C.S.A. § 5105)), and Count VI (conversion) are directed at Waller Marine and David Waller.

Defendants contest the validity of the Promissory Note, alleging that Greenwalt lacked authority to bind W2 and that the $250,000 was understood to be an "at risk" investment.  See, e.g., Doc. 42 ¶¶ 8-9.  Defendants also question the provenance of the Promissory Note, alleging, for example, that "neither Plaintiff nor Mr. Greenwalt shared

a copy of the alleged Note with Defendants until 2014, nearly three years after the alleged Note was supposedly executed." Doc. 73 at 4. In short, Plaintiff's action is dependent on the validity of the Promissory Note.

Neither the Promissory Note, nor the Amended Complaint, explains the purpose of the purported $250,000 loan. W2 alleges in its Answer that Gelman wired the funds pursuant to Greenwalt's instructions, and that the funds "were believed to be Mr. Greenwalt's source funds for a gas project in Nigeria." Doc. 42 ¶ 9. In his letter brief, Plaintiff represents that "Greenwalt, through his company Diversity Max, has sued all three [D]efendants (and others) for breaches of contract, conversion, fraud, fraudulent conveyance, unjust enrichment and related claims arising out of the same Nigeria project, the same transfer of funds upon sale of [a particular] vessel, and the failure to repay loaned funds . . . ." Doc. 72 at 1 n.1. Greenwalt commenced that lawsuit against Defendants (as well as two other corporate entities and another individual) on December 17, 2014, in the United States District Court for the Southern District of Indiana. See Diversity Max, LLC. v. Waller, et al., Case No. 1:14-cv-2066, Complaint (S.D. Ind. filed Dec. 17, 2014). The Greenwalt complaint alleges that the Defendants requested a loan from Greenwalt to fund "the Nigeria Project," and that a portion of the loan would be used to retire debt on the vessel "Symphony," and that Greenwalt loaned Defendants $2.5 million that were not repaid. Id. ¶¶ 22-23, 30. The Greenwalt action does not mention Plaintiff or the Promissory Note. See id.

On December 10, 2014 (shortly after filing this action and shortly before the filing of the Greenwalt action), Plaintiff and his counsel entered into the Agreement with

3

Greenwalt and his counsel, invoking the common interest doctrine for purposes of Plaintiff and Gelman's separate lawsuits against Defendants. Defendants became aware of the Agreement during the course of discovery, when Plaintiff invoked the common interest doctrine in connection with Greenwalt's deposition noticed for January 25, 2016.[3] Following a teleconference with counsel on January 15, 2016, I ordered Plaintiff to submit the Agreement for in camera review, and the parties to brief the issue of the common interest doctrine, with specific attention to areas of inquiry at Greenwalt's deposition where Plaintiff anticipates raising objections. The parties thereafter submitted letter briefs, see Docs. 72 & 73, and Plaintiff submitted the Agreement for in camera review.[4]

In his letter brief, Plaintiff avers that he "intends to object only to questions seeking to elicit the substance of communications that occurred *after* the Complaint was filed in this action on November 13, 2014, i.e., after the parties were both in parallel legal disputes with [D]efendants," and that he does not intend to object to questions pertaining to the underlying transactions. Doc. 72 at 1 & 5 (emphasis in original). Defendants

---

[3] The parties later postponed Greenwalt's deposition to March 10, 2016.

[4] The Agreement is entitled "Common Interest Agreement," and recites that both "clients" have claims against Defendants, that they have common interests in those claims, and that counsel anticipate exchanging "documents, privileged or confidential information, communications and confidences of their respective clients relating to the Litigation for the purpose of furnishing legal advice and representation . . . ." The Agreement defines the materials subject to protection as "attorney work product and privileged or confidential information related to the Litigation, including, but not limited to, drafts, documents or summaries thereof, summaries of discovery, factual material, mental impressions, memoranda, interview reports, and the confidences of the Undersigned to their respective Undersigned Counsel."

counter than the common interest doctrine is improperly invoked and that the Agreement should be produced; or, in the alternative, that the privilege be limited "to communications with counsel only," and that all communications and/or correspondence between Plaintiff and Greenwalt made outside of the presence of counsel be produced. Doc. 73 at 5.

## II.     DISCUSSION

The parties do not dispute that Pennsylvania law governs this action. "As the claims and defenses in issue in this action arise under state law, Federal Rule of Evidence 501 and 1101(c) provide that [the Court] should apply state law in determining the extent and scope of the attorney-client privilege." Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 861-62 (3d Cir. 1994). As will be discussed more fully below, the Pennsylvania Supreme Court has not directly addressed the common interest doctrine nor defined if and when it is applicable. See CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta, LLP, No. 11-4753, 2013 WL 315716, at *2 (E.D. Pa. Jan. 28. 3013) (DuBois, J.). Therefore, it is necessary for the federal court to predict how the state supreme court would rule, which in turn requires consideration of "(1) what that court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue." Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231, 236 (3d Cir. 2006).

"The common interest doctrine is the exception to the general rule that the attorney-client privilege is waived upon disclosure of privileged information with a third party." Cargill v. LGX, LLP, No. 00-4252, 2007 WL 2142355, at *2 (E.D. Pa. July 23,

2007) (Tucker, J.) (quoting Katz v. AT&T Corp., 191 F.R.D. 433, 436 (E.D. Pa. 2000)). "Known also as the community of interest doctrine, the common interest doctrine protects parties, with shared interest in actual or potential litigation against a common adversary, from waiving their right to assert privilege when they share privileged information." Id. (citing Katz, 191 F.R.D. at 436).  The common interest exception to waiver of the attorney-client privilege "applies when clients are represented by separate counsel."  CAMICO, 2013 WL 315716, at *2 (quoting In re Teleglobe Commc'ns Corp, 493 F.3d 345, 365 (3d Cir. 2007)); In re Condemnation by City of Philadelphia in 16.2626 Acre Area, 981 A.2d 391, 397-98 (Pa. Commw. 2009) (noting common interest exception arises where "co-defendants with essentially the same interests must retain separate counsel to avoid potential conflicts . . . [and] to pool their resources on matters of common interest").  The doctrine also requires the parties to have a common legal interest, and not merely a common commercial interest.  Cargill, 2007 WL 2142355, at *2, 3.  Although rooted in the joint defense privilege which was developed to allow criminal defense attorneys to coordinate strategies, the doctrine applies equally to civil and criminal cases and to plaintiffs and defendants.  Teleglobe, 493 F.3d at 364-65; see also Higgens v. Eichler, No. 96-6215, 1997 WL 325779, at * 3 (E.D. Pa. June 6, 1996) (Buckwalter, J.).

  As previously noted, the common interest doctrine has not been explicitly adopted by the Pennsylvania Supreme Court, nor codified by the state legislature, and it has received very little attention in Pennsylvania courts.  The doctrine is broadly defined in the Restatement (Third) of the Law Governing Lawyers:

> If two or more clients with a common interest in a litigated or non-litigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged . . . that relates to the matter is privileged as against third persons.

Rest. 3d Law Governing Lawyers § 76.  The Pennsylvania Supreme Court has favorably cited that section of the Restatement in dicta, together with language suggesting the common interest doctrine is recognized under state law:

> Even if Slayton [one of defense counsel's clients] heard the conversation between Appellant and Goldstein [one of defense counsel's other clients], it would not necessarily follow that the privilege was waived since, under the prevailing law of this Commonwealth, the joint-client or common-interest privilege could potentially apply.  <u>In re Condemnation by City of Phila.</u>, 981 A.2d 391, 396-98 (Pa. Cmwlth. 2009); . . .; Rest. [Third] Law Governing Lawyers §§ 75-76.  If the question ultimately becomes relevant, whether a privilege existed under any of the above theories should be determined in the first instance by the Commonwealth Court on a development of the record.

<u>Karoly v. Mancusco</u>, 65 A.3d 301, 315 (Pa. 2013).  In addition, the common interest doctrine is consistent with the purpose of the attorney-client privilege, codified in Pennsylvania at 42 Pa. C.S.A. § 5928, which "is intended to foster candid communications between counsel and client, so that counsel may provide legal advice based upon the most complete information from the client."  <u>In re Thirty-Third Statewide Investigating Grand Jury</u>, 86 A.3d 204, 216 (Pa. 2014).  Therefore, there is significant support for the prediction that Pennsylvania would recognize the doctrine in at least some form.

7

The leading Third Circuit case on the common interest doctrine applied Delaware rather than Pennsylvania law. See Teleglobe, 493 F.3d at 345 (applying Delaware law to certain exceptions to attorney-client privilege). Nonetheless, courts in this jurisdiction and elsewhere have consistently cited Teleglobe as the leading case on the doctrine. See, e.g., CAMICO, 2013 WL 315716, at *1 ("While Teleglobe was a case applying Delaware law, its discussion of the common-interest doctrine was not so limited. The Third Circuit engaged in a contemplative analysis of the purpose, history, and requirements of the common-interest doctrine, without much reference to Delaware law at all. . . . In fact, Teleglobe has been cited by courts around the country as the leading opinion on the common-interest doctrine.") (quoting Hoffmann-La Roche, Inc. v. Roxane Labs., Inc., 2011 WL 1792791, at *6 n.6 (D.N.J. May 11, 2011)). Several courts have cited Teleglobe as persuasive authority on the doctrine, including as it applies in Pennsylvania. See Serrano v. Chesapeake Appalachia, LLC, 298 F.R.D. 271, 284 (W.D. Pa. Mar. 6, 2014) ("Teleglobe has become a leading opinion in these areas [the common interest and co-client doctrines] and provides persuasive authority as to Pennsylvania law.").[5] Therefore, although the Pennsylvania Supreme Court has not explicitly adopted the common interest doctrine, I predict that it would.

Given the basic parameters of the common interest doctrine, it is not surprising that it is usually invoked in matters involving co-defendants with separate counsel.

---

[5] I note that the Pennsylvania Superior Court recently stated that there is no actual conflict between Pennsylvania and Delaware law governing matters of privilege. Donald M. Durkin Contracting v. Cottrell, No. 2513 EDA 2014, 2015 WL 5970499, at *5-6 (Pa. Super. Sept. 28, 2015).

Cargill, 2007 WL 2142355, at *2; see also Condemnation, 981 A.2d at 397 (citing examples of common interest or joint defense privilege in Pennsylvania, all of which involve co-defendants). Where the entities asserting the doctrine are not co-defendants, the doctrine has been successfully asserted in connection with cases involving patent rights, see, e.g., Baxter Travenol Labs., Inc. v. Abbott Labs., 1987 WL 12919, at *1 (N.D. Ill. June 19, 1987) ("A community of legal interests may arise between parties jointly developing patents . . . ."), and in connection with business interests during a corporate merger. See, e.g., Hewlett-Packard Co. v. Bausch & Lomb Inc., 115 F.R.D. 308, 310 (N.D. Cal. 1987) (Bausch & Lomb had a common legal interest with non-party GEC because the parties were in merger negotiations). The present case does not fall into any of these categories because Gelman and Greenwalt are not co-defendants in a criminal or civil matter, nor does either parties' lawsuit implicate a patent or merger. In short, assuming Pennsylvania would adopt the common interest doctrine, case law does not provide a definitive answer as to whether Gelman may properly assert the doctrine in the context of the present lawsuit.

      The question whether the common interest doctrine applies as between Gelman and Greenwalt turns on how closely the interests of the individuals asserting the doctrine must be in order for the doctrine to apply. CAMICO, 2013 WL 315716, at *1; see also Cargill, 2007 WL 2142355, at *2 ("Courts have noted, and this Court agrees, that the test as to the meaning of 'common legal interest' is not clear.") (citations omitted). Specifically, courts are divided as to whether the interests of the parties asserting the doctrine must be legally identical or somewhat less than that. For example, the Cargill

9

court stated that, in addition to being legal and not merely commercial, "[t]he nature of the interest . . . must be 'identical, not similar.'" 2007 WL 2142355, at *2 (quoting Katz, 191 F.R.D. at 436); see also Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1172 (D.S.C. 1974) (community of interest exists among different entities where they have identical legal interest regarding a communication between an attorney and a client concerning legal advice). On the other hand, the Third Circuit stated in Teleglobe that "members of the community of interest must share at least a substantially similar legal interest." 493 F.3d at 365. While Teleglobe's "substantially similar legal interest" language does not establish a bright-line rule, Cargill's use of the language "identical, not similar," was immediately followed by a statement that the meaning of "common legal interest" is not clear. Cargill, 2007 WL 2142355, at *2. Read together, it appears that where the common interest doctrine applies, the interests between the individuals asserting its protection must be at least substantially similar, if not identical; that is, the interests between them must be closer to "legally identical" than to "legally similar."

Not surprisingly, the parties dispute the degree of similarity that exists between Gelman and Greenwalt's legal interests; Plaintiff argues that his and Greenwalt's legal interests "are aligned with one another," while Defendants argue that "the legal interests of Plaintiff and Mr. Greenwalt are unrelated." Doc. 72 at 4; Doc. 73 at 3. It is certainly true that the suits are not identical. For example, Plaintiff's claims against Defendants in this action are dependent on the validity of the alleged Promissory Note, which specified Pennsylvania as the venue for dispute resolution, whereas the Promissory Note has no bearing on the claims asserted by Greenwalt in his action against the same defendants in

10

Indiana federal court. Nor does the money Greenwalt either lent to or invested in Defendants' project play any role in Plaintiff's case here. On the other hand, both lawsuits name David Waller, Waller Marine, and W2 as defendants, arise from common facts and involve common witnesses, and assert similar claims against Defendants for conversion, breach of contract, fraudulent transfer/conveyance, and unjust enrichment. While not identical, the pleadings demonstrate that the legal interests of Gelman and Greenwalt are more than generically similar, and I conclude that they are sufficiently similar to trigger the common interest doctrine.

However, my finding that the common interest doctrine is applicable to this case does not render privileged all of the questions which may be posed at Greenwalt's deposition. Plaintiff states in his letter brief that he does not intend to object at Greenwalt's deposition to questions regarding the underlying transactions between the parties, and it is clear that such questions would not be entitled to protection under the common interest doctrine. However, Plaintiff plans to raise the common interest doctrine in connection with "more recent post-Complaint communications" between the signatories of the Common Interest Agreement. Doc. 72 at 5. This is problematic insofar as Teleglobe limits the protection to communications made between counsel and not to those made between the parties:

> Because the common-interest privilege is an exception to the disclosure rule, which exists to prevent abuse, the privilege should not be used as a post hoc justification for a client's impermissible disclosures. The attorney-sharing requirement helps prevent abuse by ensuring that the common-interest privilege only supplants the disclosure rule when attorneys,

11

>and not clients, decide to share information in order to coordinate legal strategies.

Teleglobe, 493 F.3d at 365. Thus, to the extent the doctrine is applicable, it shields only communications or correspondence as between attorneys representing different clients, and not between the separately-represented clients themselves, and only to such inter-attorney communications or correspondence which occurred in anticipation of suit or after suit was commenced. Were the doctrine to be applied more expansively, certain communications or correspondence between Gelman and Greenwalt would be shielded from discovery, even though Gelman and Greenwalt were the only signatories to the Promissory Note which is at the heart of this case. More generally, such an expansive reading of the common interest doctrine would permit individuals who claim the protection of the doctrine in one context to work in concert to advance separate and unrelated actions while shielding their communications or correspondence from discovery. Such an outcome is not countenanced by case law and would amount to an abuse of the doctrine.

Consistent with Teleglobe, therefore, any communications or correspondence between Plaintiff and Greenwalt outside of the presence of counsel are not privileged and must be produced.[6] Similarly, communications or correspondence made between

---

[6]In their letter brief, Defendants aver that Plaintiff has not produced a privilege log identifying the communications or correspondence withheld from discovery subject to the common interest doctrine, and Plaintiff has produced "numerous correspondence that have been redacted so that Defendants are unable to identify the date [] of the communications or the parties thereto." Doc. 73 at 4 n.1. Consistent with this memorandum, Plaintiff shall produce a privilege log within one week of the date of this memorandum and order, and shall by the same date produce unredacted versions of any

Gelman and Greenwalt may be the subject of questioning at Greenwalt's deposition, whether they occurred before or after commencement of this lawsuit, and must be answered.[7]

### III. CONCLUSION

---

correspondence between Plaintiff and Greenwalt, outside the presence of counsel, unless any such documents are protected by some other privilege.

[7]Because I find that the doctrine applies, I will not compel production of the Common Interest Agreement. I note that my conclusion that the doctrine does not extend to communications between the two clients is consistent with the Agreement's stated purpose of allowing counsel to exchange otherwise privileged information "for the purpose of furnishing legal advice to and representation to their respective clients." To the extent the Agreement can be read to protect any communications beyond those allowed in this Memorandum Opinion, the Agreement is not valid or enforceable.

13

I predict that the common interest doctrine would be recognized by the Pennsylvania Supreme Court, and I conclude that it is applicable as between Plaintiff and Greenwalt because their legal interests, while not identical, are substantially similar. Therefore, the Common Interest Agreement entered into by Plaintiff and his counsel, on the one hand, and non-party fact witness Greenwalt and his counsel, on the other, need not be produced. However, the doctrine protects only communications between attorneys who represent different clients with substantially similar legal interests made in anticipation of, or after commencement of, litigation. Therefore, communications made between Plaintiff and Mr. Greenwalt, outside the presence of counsel, are not privileged by operation of the common interest doctrine.

An appropriate Order follows.